UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SASHA BELL, as next friend and
mother of one minor child, M.B.,

    Plaintiff,

Case No. 16-10825

v.

Hon. John Corbett O'Meara

LOCKWOOD, ANDREWS & NEWNAM, P.C.,
a Michigan corporation, LOCKWOOD, ANDREWS
& NEWNAM, INC., a Texas corporation, LEO A.
DALY COMPANY, a Nebraska corporation, ROWE
PROFESSIONAL SERVICES CO., f/k/a ROWE
ENGINEERING, INC., VEOLIA NORTH AMERICA, LLC,
a Delaware corporation, VEOLIA NORTH AMERICA, INC.,
a Delaware corporation, BRADLEY WURFEL, EDEN
VICTORIA WELLS, M.D., and HOWARD CROFT,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR REMAND**

Before the court is Plaintiff's motion for remand, filed March 16, 2016. Defendant Lockwood, Andrews & Newnam, Inc. filed a response on April 4, 2016. Plaintiff submitted a reply on April 5, 2016. Pursuant to L.R. 7.1, the court did not hear oral argument, as the matter has been thoroughly and sufficiently presented in the briefs.

## BACKGROUND FACTS

This case is one of dozens of cases related to the crisis in Flint, Michigan, where the water was contaminated with lead after the municipality switched its drinking water source from the Detroit Water and Sewer Department to the Flint River. The plaintiff here is Sasha Bell, as next friend and mother of her minor child, M.B. Bell contends that her child has suffered various health problems from lead poisoning as a result of exposure to Flint water. In the complaint, Bell asserts state claims of professional negligence, gross negligence, intentional infliction of emotional distress, and battery against various defendants, including state contractors and state officials. One of the defendants, Lockwood, Andrews & Newnam, Inc. ("LAN"), removed this case from state court on March 8, 2016.[1]

The City of Flint began using the Flint River as its drinking water source on April 25, 2014. Plaintiff alleges that LAN was responsible for providing engineering services to make Flint's inactive water treatment plant sufficient to treat the new water source. Compl. at ¶¶ 47, 49. Plaintiff contends that LAN "did not require water quality standards to be set for the Flint River water that would be delivered to Flint's residents. Further, LAN did not require corrosion control to

---

[1] At the time of removal, the other named defendants had not been served with the summons and complaint.

ensure that corrosive water was not delivered throughout Flint's aging water system." Id. at ¶ 51. Plaintiff asserts that LAN "had a duty to recognize the need for corrosion control and advise that it should be implemented." Id. at ¶ 53. According to Plaintiff, "it is well known to trained professionals that corrosive water not properly treated results in the corrosion of pipes, such that the metal in the pipes, including lead, will leach into drinking water." Compl. at ¶ 56.

Plaintiff alleges that LAN issued reports on November 26, 2014, and August 27, 2015, addressing "compliance with EPA and MDEQ operations and regulations." Id. at ¶¶ 70, 128. In each report LAN "failed to address the hazard of lead associated with the corrosive water flowing through the pipes" in Flint. Id.

Plaintiff's sole claim against LAN is for professional negligence. Plaintiff alleges that LAN undertook to perform a duty owed to Plaintiff by the City of Flint and/or the State of Michigan and failed to exercise reasonable care in executing the transition to the Flint River drinking water source. Compl. at ¶¶186-93. Specifically, Plaintiff alleges that LAN "failed to exercise reasonable care when they failed to recognize the need for corrosion control in a system containing lead pipes when the LAN Defendants continued to undertake duties to provide professional engineering services in relation [to] the Flint Water System on an ongoing basis." Id. at ¶193.

Defendant's petition for removal alleges that the court has federal question jurisdiction under the "substantial federal question" doctrine. According to Defendant, the complaint repeatedly references the federal Safe Drinking Water Act and its regulations (including the Lead and Copper Rule), thus raising a substantial enough federal question to confer federal jurisdiction.

## LAW AND ANALYSIS

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." Gunn v. Minton, 133 S.Ct. 1059, 1064 (2013) (citation omitted). The party seeking removal bears the burden of demonstrating that the court has jurisdiction. See Eastman v. Marine Mechanical Corp., 438 F.3d 544, 549 (6th Cir. 2005). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." Id. at 550 (citation omitted).

District courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[2] See also 28 U.S.C. § 1441(b). A case can "arise under" federal law in two ways: when federal law creates the cause of action asserted, or when a state-law claim necessarily

---

[2] Defendant does not allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.

raises a substantial federal issue.  <u>Gunn</u>, 133 S.Ct. at 1064-65.  Given that Plaintiff only asserts a state claim, Defendant alleges jurisdiction under the latter method, which the Supreme Court has referred to as a "special and small category" of cases.  <u>Id.</u>

In determining whether this case fits into that "slim" category, the court considers whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" <u>Gunn</u>, 133 S.Ct. at 1065 (quoting <u>Grable & Sons Metal Prods., Inc. v. Darue Engin. & Mfg.</u>, 545 U.S. 308, 314 (2005)).

> That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," when can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

<u>Id.</u> (citing <u>Grable</u>, 545 U.S. at 313-14).

Applying the <u>Gunn/Grable</u> test, the court finds that federal jurisdiction does not exist over Plaintiff's state law claims.  Plaintiff's professional negligence claim

against LAN requires the following elements: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." Loweke v. Ann Arbor Ceiling & Partition Co., 489 Mich. 157, 162 (2011). This "garden-variety state tort claim" does not raise a substantial federal issue. See Hampton v. R.J. Corman R.R. Switching Co. LLC, 683 F.3d 708, 712 (6th Cir. 2012) (no federal jurisdiction when plaintiff alleged defendant violated federal statute and regulations and was thus presumptively negligent under state law).

Defendant argues that Plaintiff has alleged that it breached a duty imposed by the federal Lead and Copper Rule, not state common law, thus raising a substantial federal question. The court does not read Plaintiff's complaint to claim that Defendant's duty is to be measured by compliance with the Lead and Copper Rule, but rather that Defendant had a duty to exercise reasonable care. See Compl. at ¶¶ 185-99. Even if Plaintiff sought to show that Defendant breached its duty by violating the Lead and Copper Rule, however, federal jurisdiction would not attach. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813-817 (1986) ("[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional

purposes and the federal system."); Hampton, 683 F.3d at 712-13.

This conclusion is supported by the fact that the Safe Drinking Water Act (including the Lead and Copper Rule) does not provide a federal right of action for the recovery of compensatory damages, which is what Plaintiff seeks here. See 42 U.S.C. § 300j-8; Harding-Wright v. District of Columbia Water and Sewer Authority, 350 F.Supp. 2d 102, 105-106 (D.D.C. 2005) (in lead contamination case, no federal jurisdiction over negligence claim or negligence *per se* claim alleging violation of Lead and Copper rule).  The lack of such a remedy "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Merrell-Dow, 478 U.S. 814.  See also Mulcahey v. Columbia Organic Chems. Co, 29 F.3d 148, 151 (4th Cir. 1994) (plaintiff alleged violation of federal environmental statutes constituted negligence *per se*; no federal jurisdiction because those statutes did not provide compensatory damages remedy).  For these reasons, the court concludes that it lacks subject matter jurisdiction over the complaint and that remand is required.

Plaintiff seeks attorney's fees pursuant to 28 U.S.C. § 1447(c), which provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id.  "Absent

unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). "A defendant lacks an objectively reasonable basis for removal when well-settled case law makes it clear that federal courts lack jurisdiction to hear the case." A Forever Recovery, Inc. v. Twp. of Pennfield, 606 F. App'x 279, 281 (6th Cir. 2015).

It is clear that Defendant lacked an objectively reasonable basis for removal here, as demonstrated by the dearth of case law cited in support of its position. Indeed, the applicable Supreme Court and Sixth Circuit precedent all points in the same direction: remand. See Merrell-Dow, 479 U.S. at 817; Gunn, 133 S.Ct. at 1066-68; Eastman, 438 F.3d at 552-54; Hampton, 683 F.3d at 712-13. See also Mulcahey, 29 F.3d at 151; Harding-Wright, 350 F. Supp.2d at 105-106. "[N]othing in any of the Supreme Court's cases – or those in the Sixth Circuit – should have given defendants any confidence that this federal issue was one that a federal court would find 'substantial.'" Gearheart v. Elite Ins. Agency, 2016 WL 81766 (E.D. Ky. Jan. 7, 2016). Accordingly, the court will grant Plaintiff's request for attorney fees incurred in filing her motion for remand.

IT IS HEREBY ORDERED that Plaintiff's motion for remand is GRANTED and that this matter is REMANDED to Genesee County Circuit Court.

IT IS FURTHER ORDERED that Plaintiff shall submit an affidavit and billing records in support of her request for attorney's fees by April 22, 2016.

                                            s/John Corbett O'Meara
                                            United States District Judge

Date: April 13, 2016

I hereby certify that a copy of the foregoing document was served upon the counsel of record on this date, April 13, 2016, using the ECF system.

                                            s/William Barkholz
                                            Case Manager